324 So.2d 118 (1975)
TRIO SALES, INC., a Florida Corporation, Appellant,
v.
CROSSROADS SHOPPING CENTER, INC., a Florida Corporation, Appellee.
No. 75-5.
District Court of Appeal of Florida, Second District.
December 10, 1975.
Rehearing Denied January 19, 1976.
*119 Ainslee R. Ferdie, Coral Gables, for appellant.
James I. Knudson, St. Petersburg, for appellee.
BOARDMAN, Judge.
On April 9, 1968, the Azar Corporation (Azar), as lessor, and Austin Grote and Marion Grote (Grotes), as lessees, entered into a written lease agreement for store space in the Azar Plaza Shopping Center to be utilized by the lessees as a laundromat. The lease provided, among other things, for the said lessor to retake possession of the premises in the event of default by the lessees.
On June 10, 1968, the Grotes entered into a contract to purchase a laundromat franchise and the necessary equipment from Miller Coin Laundry Distributors of Tampa, Inc., now known as Trio Sales, Inc., appellant.
In the interim, Azar sold the plaza and all leasehold interests to Crossroads Shopping Center, Inc., appellee. Subsequently, the Grotes defaulted in the lease by failing to pay the agreed monthly rental payments; whereupon, appellee filed an appropriate action and obtained possession of the premises pursuant to a final judgment. The Grotes likewise defaulted in their purchase agreement with appellant. This agreement had been assigned to the Thrift Corporation (Thrift) by appellant.
Upon default in the said lease agreement by the Grotes, appellant, through its representative advised appellee of its willingness to pay the back rent then due and owing and assume possession of the premises. Appellant believed it had that right under the provisions of Article 33 of the lease.
Appellant was informed by appellee's representative that it would only consider leasing the premises to appellant under a new lease agreement. The parties were unable to agree on either the monthly payments or the space to be occupied by appellant. Thereafter, appellee leased the premises to two other tenants and denied that appellant had any rights under the lease with the Grotes. Appellant became obligated upon the default of the Grotes and *120 paid the sum of $14,666.50 to its assignee, Thrift.
Appellant filed the instant action against appellee seeking a declaration of whether it had any rights under the lease aforesaid and for money damages. During the non-jury trial, appellant contended that under Article 33 of the lease it had an absolute right to assume possession of the premises and operate the laundromat. The trial court entered a final judgment in favor of appellee. This timely appeal followed.
Inasmuch as the interpretation and construction placed upon said Article 33 is paramount to our decision reached in this case, it is set out in its entirety:
In the event that Miller Coin Laundries Distributors, of Tampa, Inc. [appellant] assigns this lease and the assignee is indebted upon a Security Agreement Retail Installment Contract or Chattel Mortgage to ... [appellant] and said assignee or his successor should default in either the obligations under said Security Agreement Retail Installment Contract or Chattel Mortgage or under this lease, the Lessor agrees that said ... [appellant] may in that event have the Lessor's consent to resume control of the premises for the then existing remaining portion of said lease or option providing that they correct any delinquency in rent then owing. (Bracketed portions supplied).
A cursory reading of Article 33 shows it is ambiguous and subject to several different interpretations. For example, appellant was not the lessee under the lease. When reviewed in the light of the surrounding factual circumstances, the article, as written, simply does not comport with plain ordinary common sense. Ambiguities in a contract may be resolved by judicial interpretation. The circumstances existing at the time the parties entered into the contract should be considered in ascertaining the meaning of ambiguous or uncertain language. See 7 Fla.Jur., Contracts § 90, entitled Surrounding Circumstances.
The record reflects that appellant was in the business of obtaining locations for coin operated laundromats and selling laundry equipment to the prospective operators. Appellant was actively engaged in the negotiations for the Grote lease. Azar's president testified that appellant wanted a waiver from Azar whereby in the event the Grotes defaulted in the lease, appellant could remove the laundry equipment it would be selling to the Grotes under a security agreement. Azar refused to give such a waiver but advised appellant that should a default occur Azar would be willing for appellant to step in and pay the rent and either operate the business or resell it.
Article 33 of the lease reflects this intention except that the designation of the parties seems to be mixed up. The explanation for this confusion obviously lies in the fact that appellant establishes laundromats in many locations, and in most instances appellant, itself, actually enters into a lease of the premises and then assigns the lease to the party who will operate the business and to whom appellant then sells the equipment. The record reflects that this type of provision had been used in more than three hundred contracts, and in those instances where appellant was the lessee it precisely states the understanding of Azar's president with respect to the rights of appellant under the subject lease. Therefore, we think it clear that the parties intended for appellant to have, or at least in light of the circumstances surrounding the entry into the lease, appellee, as the successor lessor, cannot be heard to deny that appellant had, the right to pay the rent and assume possession of the leasehold premises upon a default by the Grotes. In effect, appellant is a third party creditor beneficiary under the provisions of the lease. See 4 A. Corbin, Corbin on Contracts, § 787 (1951).
*121 Appellant asserts that it is entitled to damages of at least $25,000 because this figure was testified as being the value of the equipment and fixtures in place. However, to award appellant this sum might result in a windfall because such of the equipment which could have been removed at the time of the default in its used condition was worth only about $2,000. Actually, had Article 33 been performed according to the way that we interpret it, appellant would have taken over the leasehold, and on this record it would be speculative to estimate the profits appellant might have made under these circumstances. Thus, we think the proper measure of damages in this case is the amount which appellant had to pay Thrift upon the default of the security agreement.
Accordingly, we reverse and remand to the trial court with directions to enter a final judgment in favor of appellant in the sum of $14,666.50 plus interest at 6% per annum from the date of the payment to Thrift.
McNULTY, C.J., and GRIMES, J., concur.