2008 ND 161

**Terry SANDERS, Plaintiff
and Appellant,**

v.

**GRAVEL PRODUCTS, INC.,
Defendant and Appellee.**

No. 20080001.

Supreme Court of North Dakota.

Sept. 2, 2008.

Mark V. Larson, Larson Law Firm, P.C., Minot, ND, for plaintiff and appellant.

Lawrence E. King, Zuger Kirmis & Smith, Bismarck, ND, for defendant and appellee.

MARING, Justice.

[¶ 1] Terry Sanders appeals from an amended judgment dismissing his breach of contract and Employee Retirement Income Security Act ("ERISA") claims against Gravel Products, Inc. We conclude the district court did not err in dismissing the breach of contract action. We further conclude, however, the district court erred in granting summary judgment dismissal of Sanders' ERISA claim because genuine issues of material fact exist whether ERISA is applicable in this case. We affirm in part, reverse in part, and remand for further proceedings.

I

[¶ 2] In 1980 Sanders began working in Minot as the office manager for Gravel Products, a family-owned business that crushes, screens, and hauls gravel products for various purposes, including state and federal highway projects. Although not a member of the family that owned the business, Sanders was given increasing management and supervisory authority through the years and was eventually appointed president of the company in the early to mid 1990s. The family members involved in the business wanted to provide financial benefits for Sanders in addition to his salary, but did not want a non-family member to own company stock. The family members consulted with their accountant about devising a deferred compensation plan for Sanders.

[¶ 3] On December 18, 1996, Sanders, who was 39 years old at the time, entered into a deferred compensation agreement with Gravel Products. The agreement provided that Sanders was "an at will employee with no guarantee of employment." The agreement provided that Sanders would receive annual benefits from the company beginning at age 60 through age 75, and the amount of the benefits would

increase the longer Sanders remained employed with the company. The annual benefit table set benefits at $8,500 per year if Sanders was terminated at age 41, and up to $170,000 per year if Sanders was terminated at age 60. The agreement further provided:

> At the option of the Corporation or Employee, if Employee's employment is terminated on or after the Employee shall have reached the age of 41 for a reason other than death or the Company is sold or liquidated, the insurance policy purchased by Corporation to fund this plan may be assigned to Employee as full payment of all obligations created by this plan. The transfer shall be completed within 30 days of termination and Employee shall be responsible for all tax consequences.

In May 1997, Gravel Products purchased a "Flexible Premium Adjustable Variable Life Insurance Policy" naming Sanders as the insured, and began paying $14,000 annual premiums for the policy.

[¶ 4] Following an investigation of Gravel Products in 2002, the North Dakota Department of Transportation and the federal Department of Transportation informed the company that Sanders could not be further involved with Gravel Products or the company would not qualify for future state and federal funded highway contracts. Because Gravel products received a substantial portion of its revenue from highway projects, the company terminated Sanders' employment on October 30, 2003, when Sanders was 46 years old. Under the annual benefit table of the agreement, Sanders would have been eligible to receive $51,000 per year for 15 years when he turned age 60. Gravel Products decided to assign the life insurance policy to Sanders under the terms of the compensation agreement. Although the agreement required the transfer to be complet-

ed within 30 days of termination, the transfer was completed past the 30–day period because, according to the accountant for Gravel Products, Sanders specifically requested that if the company exercised its option to assign the life insurance policy to him, the assignment be delayed until 2004 for tax purposes. The transfer was completed in 2004 when the net cash surrender value of the policy was $114,072.83.

[¶5] Sanders sued Gravel Products for breach of contract based on the failure of Gravel Products to assign the insurance policy to him within 30 days of his termination. He also alleged a claim under ERISA, 29 U.S.C. §§ 1001–1461, that the company had failed to fully fund his retirement plan under the deferred compensation agreement. The district court ruled in a partial summary judgment that ERISA did not govern the parties' deferred compensation agreement and dismissed that claim. Following a bench trial, the court dismissed the breach of contract action. The court ruled time was not of the essence of the contract and, therefore, the failure to complete the transfer within 30 days of termination was not a breach of contract. In the alternative, the court ruled Sanders was estopped from claiming breach of contract because he had requested the delay of the transfer for tax purposes.

## II

[¶6] Sanders argues the district court erred in dismissing his breach of contract action.

[¶7] A breach of contract occurs " 'when there is nonperformance of a contractual duty when it is due.' " *Van Sickle v. Hallmark & Assoc., Inc.,* 2008 ND 12, ¶11, 744 N.W.2d 532 (quoting *Good Bird v. Twin Buttes Sch. Dist.,* 2007 ND 103, ¶9, 733 N.W.2d 601). Whether a

party has breached a contract is a finding of fact that will not be reversed on appeal unless it is clearly erroneous. *Silbernagel v. Silbernagel,* 2007 ND 124, ¶19, 736 N.W.2d 441. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after review of the entire record, we are left with a definite and firm conviction a mistake has been made. *Thompson v. Olson,* 2006 ND 54, ¶10, 711 N.W.2d 226.

[¶8] The district court specifically found, "[b]ecause of tax consequences, Sanders requested ... Gravel Products defer assigning the insurance policy to him until 2004 instead of assigning the insurance policy to him within 30 days of his termination as stated in the Agreement." The court reasoned:

There was no breach of the Agreement.... Gravel Products, as allowed by the Agreement, did assign the insurance policy to Sanders, and Sanders accepted the assignment. Although the insurance policy was not assigned within 30 days of Sanders' termination as set forth in the Agreement, that in and of itself does not constitute a breach for two reasons: there is no "time is of the essence" clause in the Agreement; and the deferred assignment was done at Sanders' request. As such, he is estopped from claiming Gravel Products breached the Agreement.

[¶9] Sanders contends the court erred in finding time was not of the essence of the agreement's option provision allowing Gravel Products to assign the insurance policy to him within 30 days of his termination, and further erred in ruling he was estopped from asserting the delay as a breach. It is unnecessary to address these issues, because assuming for purposes of argument only that time was of the essence and equitable estoppel principles do

not apply, "we will not set aside a correct result merely because the district court's reasoning is incorrect if the result is the same under the correct law and reasoning." *Hanson v. Boeder*, 2007 ND 20, ¶ 21, 727 N.W.2d 280.

[¶ 10] A person may waive contractual rights and privileges to which that person is legally entitled. *Lawrence v. Delkamp*, 2006 ND 257, ¶ 8, 725 N.W.2d 211. "Waiver is a voluntary and intentional relinquishment or abandonment of a known advantage, benefit, claim, privilege, or right." *Hanson v. Cincinnati Life Ins. Co.*, 1997 ND 230, ¶ 13, 571 N.W.2d 363. Although waiver and estoppel are similar concepts, estoppel involves conduct by both parties and prejudice is one of its essential elements, while waiver depends upon what one party intended to do, regardless of the other party. *Diversified Fin. Sys., Inc. v. Binstock*, 1998 ND 61, ¶ 16, 575 N.W.2d 677. "Estoppel arises apart from any intention on the part of the one estopped." *Peterson Mech., Inc. v. Nereson*, 466 N.W.2d 568, 571 (N.D.1991). Although the existence or absence of waiver is generally a question of fact, *CAP Partners v. Cameron*, 1999 ND 178, ¶ 18, 599 N.W.2d 309, the issue becomes a question of law if reasonable persons could draw only one conclusion from the circumstances. *Paulson v. Paulson*, 2005 ND 72, ¶ 6, 694 N.W.2d 681.

[¶ 11] The district court found that Sanders requested the delay in completing the transfer of the insurance policy for his personal tax purposes thus causing completion of the transfer to occur after the 30–day period had expired. A contract provision that time is of the essence can be waived by a party to the contract, *see Nelson v. Glasoe*, 231 N.W.2d 766 Syll. 3 (N.D.1975), and option conditions in a contract may also be waived. *See Stuart v. Stammen*, 1999 ND 38,

¶¶ 12–13, 590 N.W.2d 224; *Brunsdale v. Bagge*, 224 N.W.2d 384, 387 (N.D.1974). Although a written contract can only be modified by a contract in writing or by an executed oral agreement, an oral agreement is executed "whenever the party performing has incurred a detriment which that party was not obligated by the original contract to incur." N.D.C.C. § 9–09–06. A legal detriment need not be actual, and it does not matter if it had any value to Sanders. *See Mitchell v. Barnes*, 354 N.W.2d 680, 682–83 (N.D.1984). Gravel Products suffered a legal detriment by having to delay assignment of the insurance policy to accommodate Sanders' request, a detriment it was not obligated by the original agreement to incur. We conclude, as a matter of law, Sanders waived the 30–day period for assignment of the insurance policy.

[¶ 12] We conclude the district court's finding that Gravel Products did not breach the deferred compensation agreement is not clearly erroneous.

## III

[¶ 13] Sanders argues the district court erred in dismissing his claim under ERISA that Gravel Products failed to fully fund his retirement plan under the deferred compensation agreement. The court granted summary judgment dismissing the claim in a terse decision, simply stating "I find from the undisputed material facts ERISA does not apply in this case."

[¶ 14] The standard for reviewing summary judgment decisions is well established:

Under N.D.R.Civ.P. 56, summary judgment is a procedural device for promptly resolving a controversy on the merits without a trial if there are no genuine issues of material fact or infer-

ences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. *Hasper v. Center Mut. Ins. Co.*, 2006 ND 220, ¶ 5, 723 N.W.2d 409. The party moving for summary judgment must show there are no genuine issues of material fact and the case is appropriate for judgment as a matter of law. *Trinity Hosps. v. Mattson*, 2006 ND 231, ¶ 10, 723 N.W.2d 684. A district court's decision on a motion for summary judgment is a question of law that we review de novo on the record. *Id.* In determining whether summary judgment was appropriately granted, we view the evidence in the light most favorable to the party opposing the motion, giving that party the benefit of all favorable inferences which can reasonably be drawn from the record. *Hasper*, at ¶ 5.

*Erickson v. Brown*, 2008 ND 57, ¶ 22, 747 N.W.2d 34.

[¶ 15] ERISA "comprehensively regulates employee benefit and retirement plans" and "preempts state laws which 'relate to' any employee benefit plan." *Tolstad v. Tolstad*, 527 N.W.2d 668, 670 (N.D.1995) (quoting 29 U.S.C § 1144(a)). Although district courts of the United States have exclusive jurisdiction of many types of civil actions brought under ERISA, "[s]tate courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under paragraphs (1)(B) and (7) of subsection (a) of this section." 29 U.S.C. § 1132(e)(1). The pertinent provision in this case is 29 U.S.C. § 1132(a)(1)(B), which provides "[a] civil action may by brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify

his rights to future benefits under the terms of the plan."

[¶ 16] It appears from Sanders' amended complaint that he accuses Gravel Products of violating ERISA by failing to fund his deferred compensation plan at a level that would meet plan requirements. He "requests that defendants be ordered to pay Plaintiff the cost of full funding of the plan." Courts have held claims that ERISA was violated because an employer failed to properly fund a retirement plan are within the concurrent jurisdiction of state courts under 29 U.S.C. § 1132(a)(1)(B) because the claims arise "under the terms of the plan." *See Montner v. Interfaith Med. Ctr.*, 157 Misc.2d 583, 596 N.Y.S.2d 975, 981–82 (N.Y.City Civ.Ct.1993) (state court had concurrent jurisdiction to entertain employee's claim that an employer failed to fund an ERISA pension plan as required by the terms of an employee benefit plan); *Duffy v. Brannen*, 148 Vt. 75, 529 A.2d 643, 649–50 (1987) (state court had concurrent jurisdiction of employee's action to recover benefits that employer failed to deposit into employee's Keogh plan that was subject to ERISA). Gravel Products' argument that the ERISA claim is subject to exclusive federal court jurisdiction because it would have preempted the breach of contract claim, which the court ultimately dismissed in any event, is not persuasive. We have affirmed the dismissal of the breach of contract claim. We conclude the district court has concurrent jurisdiction over Sanders' remaining claim that Gravel Products violated ERISA by failing to adequately fund his retirement plan under the deferred compensation agreement.

[¶ 17] The district court ruled ERISA did not apply based on "the undisputed material facts." However, " '[w]ith few exceptions * * * ERISA applies to any' '(1) * * * "plan, fund or program" (2)

established or maintained (3) by an employer * * * (4) for the purpose of providing * * * benefits (5) to participants or their beneficiaries.'" *Rosati v. Cleveland–Cliffs, Inc.,* 259 F.Supp.2d 861, 870 (D.Ct. Minn.2003) (quoting *Donovan v. Dillingham,* 688 F.2d 1367, 1371 (11th Cir.1982)). It is unclear on what "undisputed material facts" the court's decision is premised.

■■■ [¶ 18] One undisputed fact is Gravel Products entered into the deferred compensation agreement with only one employee, Sanders. Gravel Products argued in the district court and this Court that there is no "plan, fund or program" because the deferred compensation agreement was entered into with a specific individual rather than with a group of employees. However, the case Gravel Products relies on for this proposition, *Lackey v. Whitehall Corp.,* 704 F.Supp. 201, 204 (D.Ct.Kan.1988), has been expressly discredited in *Cvelbar v. CBI Illinois Inc.,* 106 F.3d 1368, 1376 n. 8 (7th Cir.1997), *abrogated on other grounds by International Union of Operating Eng'rs, Local 150, AFL–CIO v. Rabine,* 161 F.3d 427, 430 (7th Cir.1998). In holding "it is possible for a one-person arrangement to qualify as an ERISA plan," the court in *Cvelbar,* at 1376 (footnote omitted), noted, "the Department of Labor, although apparently taking a different position in the early days of its administration of the statute, has concluded, and, indeed, reasserts as amicus curiae in this case, that a contract between one employee and an employer can be an employee benefit plan." Other courts that have addressed the issue since *Lackey* was decided are in accord with *Cvelbar. See, e.g., Biggers v. Wittek Indus., Inc.,* 4 F.3d 291, 297–98 (4th Cir. 1993); *Williams v. Wright,* 927 F.2d 1540, 1545 (11th Cir.1991). A "one-person arrangement" can constitute a "plan, fund or program" under ERISA. *Cvelbar,* at 1376.

[¶ 19] In *Lackey,* 704 F.Supp. at 205, the court further ruled the deferred compensation benefit was not an ERISA covered plan because there were "no plan documents, no funding accounts, no named fiduciaries or trustees, and no assets held in trust." The court said, "[t]hese factors, coupled with the fact that the deferred compensation provisions resulted from individually negotiated employment contracts, leads the court to conclude that the deferred compensation provisions at issue are not part of an ERISA-covered benefit plan." *Id.* Gravel Products argues that in this case, as in *Lackey,* there are no funding accounts, no named fiduciaries or trustees, and no assets held in trust, and relies on the following provision of the deferred compensation agreement:

5. Nothing contained in this Agreement and no action taken pursuant to the provisions of this Agreement shall create or be construed to create a trust of any kind, or a fiduciary relationship between the Corporation and the Employee, his designated beneficiary or any other person.

■■■ [¶ 20] However, Sanders has argued that his deferred compensation agreement is a "top hat" plan. "A 'top hat' plan is a pension plan which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly trained employees." 70 C.J.S. *Pensions* § 26, at p. 165 (2005) (footnote omitted); *see also In re New Valley Corp.,* 89 F.3d 143, 148 (3rd Cir. 1996); 29 U.S.C. §§ 1051(2), 1081(a)(3), and 1101(a)(1). "Top hat" pension plans are subject to ERISA. *See* 70 C.J.S. *Pensions,* at § 26; *Evans v. Sodexho,* 946 A.2d 733, 741 (Pa.Super.Ct.2008). Although "a 'top hat' plan must be an ERISA 'plan' in the first instance," *Emmenegger v. Bull Moose Tube Co.,* 197 F.3d 929, 932 n. 6

(8th Cir.1999), "top hat" plans "are not subject to all of ERISA's stringent requirements and regulations." *Sodexho,* 946 A.2d at 741. In *Fields v. Thompson Printing Co., Inc.,* 363 F.3d 259, 274 (3rd Cir.2004), the court explained:

> "Top Hat" plans are "unique animal[s] under ERISA's provisions." *Goldstein v. Johnson & Johnson,* 251 F.3d 433, 442 (3d Cir.2001). Because "these plans are intended to compensate only highly-paid executives, and ... such employees are in a strong bargaining position relative to their employers," they are free from some of the requirements that are imposed upon most ERISA plans in order to protect those employees covered by such plans. *Id.* Specifically, "Top Hat" plans are not subject to ERISA's requirements for vesting and funding, *see* 29 U.S.C. §§ 1051(2); 1081(a), and the administrators of these plans are not subject to ERISA's fiduciary requirements. *See* 29 U.S.C. §§ 1051(2), 1081(a), 1101(a).

If Sanders' plan is a "top hat" plan as he claims, the absence of funding accounts, named fiduciaries or trustees, and assets held in trust does not indicate that ERISA is inapplicable. Whether an arrangement qualifies as a "top hat" plan generally requires resolution of factual issues. *See Aiena v. Olsen,* 69 F.Supp.2d 521, 532 (S.D.N.Y.1999).

[¶ 21] Gravel Products also argued the plan was not "established or maintained." Gravel Products relied in the district court and this Court on *Curtiss v. Union Cent. Life Ins. Co.,* 823 F.Supp. 851, 855 (D.Ct. Colo.1993), in which the court noted "[t]he employer's degree of participation in the establishment or maintenance of the plan is the central question in this inquiry." The court ruled the "established or maintained" requirement was not satisfied in that case where the employer's "only in-

volvement ... was to purchase the [insurance] policy; it assumed no other role or responsibility." *Id.* The employer in *Curtiss* "did not express its intention to payment of the premiums on a regular and long-term basis, and performed no administrative tasks after the initial payment." *Id.* at 856.

[¶ 22] There is more employer participation in this case. Gravel Products apparently paid the annual premiums on the policy for several years. If it had not chosen the assignment option, Gravel Products would have been obligated to make 180 monthly payments when Sanders turned age 60. Furthermore, Gravel Products was required to monitor Sanders' activities to determine whether the benefits would continue to be paid. The agreement provided that Sanders' benefits were subject to forfeiture:

> 6. Notwithstanding anything herein contained to the contrary, no payment of any then unpaid installments of deferred compensation shall be made and all rights under the Agreement of the Employee, his designated beneficiary, executors or administrators, or any other person, to receive payments thereof shall be forfeited if either or both of the following events shall occur:
>
> > (i) The Employee shall engage in any activity or conduct which in the opinion of the Board is in competition with the business activities of the Corporation.
> >
> > (ii) After the Employee ceases to be employed by the Corporation he shall fall [sic] or refuse to provide advice and counsel to the Corporation when reasonably requested to do so.

*Compare Cvelbar,* 106 F.3d at 1377 (plan was "established or maintained" where the employers "undertook an ongoing responsibility"). The facts in this case reflect far more of an ongoing responsibility on the

part of Gravel Products than was present with the employer in *Curtiss*. There is no dispute that the last three requirements for ERISA applicability are satisfied.

[¶ 23] The existence of an ERISA plan within the statutory definition is a mixed question of fact and law. *See, e.g., House v. American United Life Ins. Co.*, 499 F.3d 443, 449 (5th Cir.2007) ("mixed question of fact and law"); *Moorman v. UnumProvident Corp.*, 464 F.3d 1260, 1266 (11th Cir.2006) ("threshold question of whether there is a genuine issue of material fact as to whether ERISA governs the plan . . . is necessarily for courts, and not juries, to decide"); *Reliable Home Health Care, Inc. v. Union Cent. Ins. Co.*, 295 F.3d 505, 510 (5th Cir. 2002) ("existence of an ERISA plan is a question of fact" reviewed for clear error, but the "legal conclusions reached by the district court in applying those facts is *de novo*"). Resolution of the factual question requires an examination " 'of *all the surrounding circumstances* from the point of view of a reasonable person.' " *Zavora v. Paul Revere Life Ins. Co.*, 145 F.3d 1118, 1120 (9th Cir.1998) (quoting *Credit Managers Ass'n v. Kennesaw Life & Accident Ins. Co.*, 809 F.2d 617, 625 (9th Cir.1987)); *see also Tierney v. UNUM Life Ins. Co.*, 97 S.W.3d 842, 846 (Tex.Ct.App.2003) ("Whether a particular set of insurance arrangements constitutes an employee welfare benefit plan is a question of fact"). We conclude Sanders has raised a genuine issue of material fact whether his deferred compensation agreement with Gravel Products is an ERISA plan.

[¶ 24] We conclude the district court erred in granting summary judgment dismissal of Sanders' ERISA claim. On remand, the district court must determine whether the deferred compensation agreement is an ERISA plan. If it is, the court must then consider the merits of Sanders' claim under ERISA.

## IV

[¶ 25] We affirm in part, reverse in part, and remand for further proceedings.

[¶ 26] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS and DALE V. SANDSTROM, JJ., and BENNY A. GRAFF, S.J., concur.

[¶ 27] The Honorable BENNY A. GRAFF, S.J., sitting in place of KAPSNER, J. disqualified.