**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

FRANCIENE SZNEWAJS,
  *Plaintiff-Counter-defendant-*
                    *Appellee,*

v.

U.S. BANCORP AMENDED AND
RESTATED SUPPLEMENTAL BENEFITS
PLAN,
  *Defendant-Counter-claimant-*
                    *Appellant,*

ROBERT SZNEWAJS; VIRGINIA
SZNEWAJS,
  *Counter-defendants-Appellees.*

No. 07-16489

D.C. No.
CV-04-01716-ROS

OPINION

Appeal from the United States District Court
for the District of Arizona
Roslyn O. Silver, District Judge, Presiding

Argued and Submitted
October 23, 2008—San Francisco, California

Filed July 13, 2009

Before: Melvin Brunetti, Glenn L. Archer* and
Richard R. Clifton, Circuit Judges.

Opinion by Judge Clifton

*The Honorable Glenn L. Archer, Jr., United States Circuit Judge for
the Federal Circuit, sitting by designation.

**COUNSEL**

Michael W. Droke (argued) and Jennifer C. Berry, Dorsey & Whitney LLP, Seattle, Washington, for the defendant-counter-claimant-appellant.

Timothy Berg, David N. Heap, and Janice Procter-Murphy (argued), Fennemore Craig, P.C., Phoenix, Arizona, for the plaintiff-counter-defendant-appellee.

**OPINION**

CLIFTON, Circuit Judge:

This case concerns, among other issues, the standard of review to be applied by courts in reviewing a decision by the administrator of a pension plan governed by ERISA, the Employee Retirement Income Security Act of 1974, 88 Stat. 829, as amended, 29 U.S.C. § 1001 *et seq.* As is commonly the case, the documents for the plan involved in this case gave the plan administrator discretionary authority to interpret the terms of the plan, which ordinarily means that a decision by the plan administrator is subject to review by a court for abuse of discretion, under *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S. Ct. 948 (1989), and *Metropolitan Life Ins. Co. v. Glenn*, ___ U.S. ___, 128 S. Ct. 2343 (2008) ("*MetLife*"). The plan in question here is a "top hat" plan, an unfunded plan that is limited to key executives of the sponsoring company. That fact has led some courts to conclude that

a plan administrator's decisions should be subject to de novo review. In the circumstances of this case, though, notably the fact that there was no financial conflict of interest that influenced the administrator to favor one result over another, we conclude that our review should be for abuse of discretion.

Defendant U.S. Bancorp Amended and Restated Supplemental Benefits Plan appeals the district court's entry of summary judgment directing the Plan to treat plaintiff Franciene Sznewajs as a designated surviving spouse beneficiary. Franciene is the ex-wife of counter-defendant Robert Sznewajs,[1] a former executive employee of U.S. Bancorp covered by the Plan. The Plan had concluded that Robert's second wife, Virginia, should be treated as his survivor beneficiary, a determination held improper by the district court. Applying the abuse of discretion standard of review, we conclude that the plan administrator's interpretation was permissible and should be affirmed. Accordingly, we reverse and remand the district court judgment with instructions for the district court to enter summary judgment in favor of the Plan.

## I. Background

As an employee covered by U.S. Bancorp's plan for top executives, Robert had the option to select a single life annuity or a joint and survivor annuity. Under a single life annuity, payments would be made monthly to him as long as he lived but no payments would be made to anyone after his death. Under a joint and survivor annuity, the amount of the monthly payments would be smaller, but if his wife lived longer than he did, payments to her would continue after his death. The total present value of the benefits was intended to be the same either way. The specific amount of the monthly payments would be determined by an actuarial calculation that took into account his selection and also the remaining life expectancy

---

[1]Because they share the same last name, in this opinion we refer to Robert, Franciene, and Virginia by their first names.

of Robert — and that of his wife, if he chose a survivor annuity — based on their ages at the time that payments started. Robert opted for a joint and survivor annuity. His election, on a form signed by him, did not identify the name of his spouse.

Robert resigned from Bancorp in December 1999 and took a position with another bank. At that time Robert was 53 years old. Although he was no longer employed by the company, Robert did not start to receive benefits then, because the plan provides that payments do not start until after the beneficiary both ceases to be an employee of the company and turns 55.

At the time he left Bancorp, Robert was married to Franciene, although they had been separated for over a year. Robert and Franciene were divorced in February 2001, eight months before Robert's 55th birthday. The divorce followed a dissolution proceeding in Minnesota state court dividing the couple's assets. Pursuant to the divorce decree, Franciene is entitled to fifty percent of any annuity payments Robert receives under the Plan.

In August of that same year, Robert married Virginia Sznewajs. In October, he turned 55, and in November, he started receiving monthly annuity benefits, the value of which the Plan calculated based on the life expectancies of Robert and Virginia.

In April 2002, Franciene filed a claim with the Plan requesting that it recognize her, and not Virginia, as Robert's designated survivor. This request was based on her interpretation of the term "retirement" as used in the Plan.

The relevant provision is section 6.1.3(a) of the Plan, which describes the time and manner of payment of benefits under a joint and survivor annuity as:

> An actuarial equivalent reduced monthly benefit for life to the Participant . . . payable to the survivor des-

ignated *at retirement*, if then living, for life after the death of the Participant . . . . If the designated survivor dies before the Participant retires, then the Participant shall select another survivor within 30 days. Except for death of the survivor the Participant shall have no power to name a new survivor . . . . If the designated survivor dies after the Participant retires but before the Participant dies, then payments will continue to the Participant in the same reduced amount and another survivor cannot be selected.

(emphasis added).

Franciene contended that "retirement" in this context meant the date of Robert's termination of employment with Bancorp (when Robert was still married to Franciene) rather than the date benefits commenced (when Virginia was Robert's wife). The plan administrator rejected Franciene's interpretation and denied her claim, deciding that Virginia had properly been identified because she was Robert's wife at the time that he started collecting benefits and the amount of the monthly payment was calculated. Franciene appealed this decision internally, but without success.

Franciene then filed this action in Arizona state court. The Plan removed the case to the federal district court and interpleaded Robert and Virginia. On cross-motions for summary judgment, the district court granted summary judgment in favor of Franciene, concluding that the plan administrator abused its discretion by interpreting the term "retirement" in a manner contrary to the Plan's plain language and to the term's ordinary meaning. The court ordered the Plan to treat Franciene as the designated survivor. It also ordered that the amount of Robert's monthly payment be recalculated based on Franciene as the survivor beneficiary rather than Virginia. Because Franciene was older than Virginia, for actuarial purposes her life expectancy was not as long, so the amount of the monthly payment was increased. Specifically, the court

ordered that the monthly payment to Robert be increased to $23,263.78, both prospectively and retroactively to November 2001.

The Plan timely appealed.

## II.   Standard of Review of the District Court's Decision

This appeal involves two different standards of review: one applying to our review of the district court's decision, and the other concerning the standard that applies to court review of the ERISA plan administrator's decision.

As for the first, we review de novo a district court's decision to grant or deny summary judgment. *Bergt v. Retirement Plan for Pilots Employed by MarkAir, Inc.*, 293 F.3d 1139, 1142 (9th Cir. 2002). We also review de novo a district court's "choice and application" of the appropriate standard for reviewing benefits decisions by an ERISA plan administrator. *Pannebecker v. Liberty Life Assurance Co. of Boston*, 542 F.3d 1213, 1217 (9th Cir. 2008).

## III.   Standard of Review of the Plan Administrator's Decision

The appropriate standard for review by a court of the administrator's decision is one of the disputed legal issues in this case, though we do not believe, in the end, that it determines the outcome. Because the issue arises in many ERISA benefit cases, however, it merits some discussion.

**[1]** Like many, perhaps most, benefit plans covered by ERISA, this Plan grants the plan administrator authority to interpret and apply the terms of the plan. Section 11.4 confers upon the plan administrator "discretionary authority to determine eligibility for benefits and to construe the terms of this Plan[,]" and seeks to limit "[t]he scope of any subsequent review, judicial or otherwise, . . . to a determination as to

whether the [plan administrator] acted arbitrarily or capriciously in the exercise of its discretion."

**[2]** Drawing from principles of trust law, the Supreme Court has held that where an ERISA plan does not provide otherwise, a court should apply a de novo standard of review to a Plan's benefits determination, under which the court should grant no deference to the plan's decision. *See MetLife*, 128 S. Ct. at 2348; *Firestone*, 489 U.S. at 115. When a plan grants the plan administrator discretionary authority to construe the plan's terms, however, the appropriate standard of review is for abuse of discretion, with any conflict of interest on the part of the plan administrator included as a factor to be taken into account in deciding whether the discretion has been abused. *See MetLife*, 128 S. Ct. at 2346, 2348; *Firestone*, 489 U.S. at 115.

**[3]** Because the Plan involved here assigns discretionary authority to the administrator, we apply the informed abuse of discretion standard. We must determine whether the plan administrator "operat[ed] under a conflict of interest," and, if so, we must weigh "that conflict . . . as a factor in determining whether there is an abuse of discretion." *MetLife*, 128 S. Ct. at 2348 (internal quotation marks and emphases omitted). This informed variation on the abuse of discretion standard requires us to discount the amount of deference given to the administrator's decision to the extent that decision appears to have been influenced by any conflicts of interest. *Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 867-68 (9th Cir. 2008); *Pannebecker*, 542 F.3d at 1218.

As *MetLife* explained, a conflict of interest commonly arises when a plan administrator serves the "dual role" of "both determin[ing] whether an employee is eligible for benefits *and* pay[ing] benefits out of its own pocket." 128 S. Ct. at 2346 (emphasis added). The "informed" element of the informed abuse of discretion standard reflects the possibility that the plan administrator might be influenced to interpret the

plan to favor its own financial interests. The possible bias that results from such a conflict of interest is, not surprisingly, a contentious issue in many ERISA benefits lawsuits.

That element plays no role in this case, however. To be sure, on the surface, it might appear that there is a risk of such a conflict of interest here. This Plan was established and is administered by Bancorp itself. Ultimate authority for its administration, including its exercise of the discretionary authority assigned to the administrator, lies with the company's executive committee (or for some decisions, its compensation committee). The Plan is also unfunded. Payments made to beneficiaries come directly from the company's pocket.

But the specific decision in dispute here is not one which had a financial impact on the company. When the decision was made to reject Franciene's interpretation, the impact on the Plan was actuarially neutral. The present value of the anticipated benefits — the amount of the Plan's liability — was the same either way, because any difference between Virginia and Franciene was offset by the recalculation of the amount of the monthly payment. Replacement of Virginia with Franciene as the person identified as the potentially surviving spouse would not have exposed the company to any greater liability. Franciene has not argued, let alone proven, that the Plan's adjudication of Franciene's claim was tainted by the self-interest of the company or the Plan, so there is no reason to review the Plan's decision with skepticism.[2] We need not discount the amount of deference ordinarily owed to

---

[2]Regrettably, in mid-2006, while the lawsuit was pending before the district court, Virginia passed away. There is no longer a possibility that the Plan will have to pay survivor benefits to Virginia after Robert dies, if the Plan's identification of Virginia is upheld, while the possibility still exists that Franciene could collect such benefits. Under the terms of section 6.1.3(a), as quoted above, at 8724-25, because Virginia passed away after Robert's retirement from the company, another person cannot be identified to replace her as the survivor. In that sense, the company now has a financial stake in the decision. Virginia's passing occurred well after the Plan had rejected Franciene's interpretation and had recognized Virginia as Robert's designated survivor beneficiary, however. No party has suggested that the Plan anticipated Virginia's premature passing at the time it made its decision, so that decision cannot be attributed to its financial self-interest.

the administrator's decision in reviewing for an abuse of discretion.

**[4]** Franciene argues that the less deferential de novo standard of review should be applied to the administrator's decision because this Plan is a so-called "top hat" plan. ERISA "defines a top hat plan as one 'which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees.' " *Gilliam v. Nevada Power Co.*, 488 F.3d 1189, 1192-93 (9th Cir. 2007) (quoting 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1)). Top hat plans are exempt from many of ERISA's substantive requirements. *See id.* at 1193.

**[5]** Neither *Firestone* nor *MetLife* involved top hat plans. As we noted in *Gilliam*, 488 F.3d at 1194, the Third and Eighth Circuits have carved a top hat exception out of *Firestone* by reviewing de novo the benefit determinations by administrators of top hat plans despite the existence of discretion-granting clauses in the pension plans at issue in these cases. *See Goldstein v. Johnson & Johnson*, 251 F.3d 433, 442-43 (3d Cir. 2001); *Craig v. Pillsbury Non-Qualified Pension Plan*, 458 F.3d 748, 752 (8th Cir. 2006). Both *Goldstein* and *Craig* emphasized, however, that application of a de novo standard of review did not materially change the outcome in either case, since ordinary contract principles require a reviewing court to give full effect to the entire pension plan, including any provisions granting the administrator discretionary interpretation. *Goldstein*, 251 F.3d at 436, 443-44; *Craig*, 458 F.3d at 752.

**[6]** We do not believe, and have found no cases to suggest, that applying a different standard of review under these circumstances would lead to a materially different result. We conclude that importing "de novo" language into the standard of review simply because the plan involved is a top hat plan would create unnecessary confusion. We will therefore con-

tinue to adhere to the framework established by the Supreme Court in *Firestone* and *MetLife* for all covered plans, top hat or otherwise. Where, as here, there was no conflict of interest that tainted the Plan's determination, the Plan's decision should be upheld unless it constituted an abuse of discretion.

## IV.   The Plan's Discretionary Determination

**[7]** Under the abuse of discretion standard, we must determine whether the plan administrator exercised its discretion reasonably. "A plan administrator's decision to deny benefits must be upheld under the abuse of discretion standard if it is based upon a reasonable interpretation of the plan's terms and if it was made in good faith." *McDaniel v. Chevron Corp.*, 203 F.3d 1099, 1113 (9th Cir. 2000). "Indeed, an administrator's decision is not arbitrary unless it is not grounded on *any* reasonable basis." *Hensley v. Nw. Permanente P.C. Retirement Plan & Trust*, 258 F.3d 986, 1001 (9th Cir. 2001), *overruled on other grounds by Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955 (9th Cir. 2006) (en banc) (internal quotation marks omitted).

The Plan does not expressly define the term "retirement." Robert did not fit the classic model, for he did not stop working at age 53 when he left Bancorp's employment. Instead, he went to work somewhere else. He did not stop working when he started collecting benefits from the Plan when he turned 55, either. So what does "retirement," as that term is used in the Plan, mean in these circumstances? More importantly, was the Plan's interpretation unreasonable and an abuse of its discretion?

Franciene presented the Plan with her contention that, at least for the purpose of establishing the identity of the surviving spouse beneficiary, the Plan ought to define "retirement" as the termination of a participant's employment with Bancorp, rather than treating the commencement of annuity benefits as "retirement." The plan administrator responded with a

carefully-reasoned, six-page decision in which it examined numerous Plan provisions and considered the effect of Franciene's proposed interpretation in each of them. On review, the district court conducted a very similar provision-by-provision analysis but reached the opposite conclusion regarding which of the two proposed constructions was more appropriate.

[8] We conclude that the Plan, read as a whole, is ambiguous regarding what the term "retirement" means. Neither construction of the term fits perfectly into every single Plan provision that uses the term or one of its derivations. For example, section 6.1.4 establishes the method by which a participant's monthly annuity benefit will be reduced if the participant terminates employment with Bancorp before he or she is eligible for "early retirement[.]" Construing the term "retirement" as "termination of employment" would render this provision meaningless, whereas a "commencement of benefits" construction would make sense in this context. On the other hand, section 6.1.1(c), which establishes the method for calculating an "Additional Benefit Service Benefit[,]" states that "[u]pon retirement . . . [an eligible] Participant . . . shall receive a monthly benefit . . . ." Here, the more sensible reading of "retirement" is "termination of employment."

[9] This is a classic case of ambiguity. The administrator's construction of this ambiguous Plan term does not appear to us to be unreasonable or made in bad faith. *See McDaniel*, 203 F.3d at 1113. Robert did not actually "retire" at either of the times identified as events that should be treated as "retirement" under the Plan. From the Plan's perspective, though, he was treated as someone who had "retired" when the Plan started paying him benefits and had to make the actuarial calculation of what amount should be paid out each month, so taking that event as his "retirement" is not an illogical interpretation for the Plan to make.

[10] Under the deferential standard which courts must use to review the administrator's interpretation in the absence of

any evidence of conflict of interest, the administrator did not abuse the discretion which the Plan confers upon it, and the district court erred in concluding otherwise. *McDaniel*, 203 F.3d at 1113 ("The question we must ask is not whose interpretation of the plan documents is most persuasive, but whether the interpretation is unreasonable.") (internal quotation marks and ellipses omitted); *see also Johnson v. Dist. 2 Marine Eng'rs Beneficial Ass'n*, 857 F.2d 514, 516 (9th Cir. 1988) (holding that this court "must resolve the ambiguity [in an ERISA plan] in favor of the [administrator's] interpretation if it is reasonable").

## V.   Conclusion

**[11]** We conclude that the plan administrator did not abuse its discretion in rejecting Franciene's claim based on its reasonable interpretation of the Plan document. Accordingly, we reverse and remand with instructions for the district court to grant summary judgment in favor of the Plan.

**REVERSED and REMANDED.**