*165 MEMORANDUM **
Marie Chellino appeals the district court’s order granting summary judgment in favor of Kaiser Foundation Health Plan, Inc. (“Kaiser”) in her action challenging the decision by Aetna Life Insurance Company (“Aetna”) to terminate her long-term disability benefits under the Kaiser Permanente Welfare Benefits Plan (“Plan”). We reverse the grant of summary judgment and remand to the district court to enter summary judgment in favor of Chellino and to order the reinstatement of her long-term disability benefits.
I
We review “a district court’s ‘choice and application’ of the appropriate standard for reviewing benefits decisions by an ERISA plan administrator” de novo. Sznewajs v. U.S. Bancorp Amended & Restated Supplemental Benefits Plan, 572 F.3d 727, 732 (9th Cir.2009) (quoting Pannebecker v. LibeRy Life Assurance Co. of Boston, 542 F.3d 1213, 1217 (9th Cir.2008)). Although the district court otherwise recognized the correct standard of review, it should not have relied on Jordan v. Nothrop Grumman Corp. Welfare Benefit Plan, 370 F.3d 869 (9th Cir.2004), for the proposition that it was required to uphold Aetna’s decision if there was “any reasonable basis” for it. After the district court opinion in this case, we made clear that Jordan applies only in the absence of a conflict of interest. Montour v. Hartford Life & Acc. Ins. Co., 588 F.3d 623, 629 (9th Cir.2009). Where there is a conflict of interest, courts “must consider numerous case-specific factors, including the administrator’s conflict of interest, and reach a decision as to whether discretion has been abused by weighing and balancing those factors together.” Id. at 940 (citing Metro. Life Ins. Co. v. Glenn, - U.S. -, 128 S.Ct. 2343, 2351-52, 171 L.Ed.2d 299 (2008)).
II
Because the district court applied an incorrect standard, we consider de novo whether, taking into account the conflict of interest as well as other factors, Aetna’s termination of benefits was an abuse of discretion. See Montour, 582 F.3d at 942. Among the factors pertinent to our determination are: Aetna’s conflict of interest, the reliability of the medical examiners’ reports, the quality and quantity of the medical evidence, and the addition for the first time on appeal of a new reason for denying benefits.
1. The surveillance footage and the opinions of Drs. Krames and Marks do not support Aetna’s decision to terminate Chellino’s long-term disability benefits. After considering Chellino’s self-reported limitations, Dr. Krames issued a report opining that Chellino was “100% disabled” due to her fibromyalgia. At Aetna’s request, Dr. Krames subsequently viewed surveillance footage of Chellino’s outdoor activities. He then issued a supplemental report opining that Chellino was not “100% disabled” but was capable of sedentary work, because her subjective complaints of pain and her stated limitations were inconsistent with her surveilled activities. After reviewing Chellino’s medical file and the surveillance footage, Dr. Marks agreed.
In fact, Chellino’s activities as shown on the surveillance footage are consistent with her subjective complaints and self-reported limitations. During her examination, Chellino told Dr. Krames that she can drive herself short distances; can shop for *166 herself, but requires assistance with large items; can go on walks for up to an hour at a time; can carry objects weighing up to two pounds, mostly against her chest; and can go horseback riding two to three times a week, riding for approximately 15-20 minutes at a time. The surveillance footage shows Chellino doing exactly that: Chellino drives herself short distances, goes shopping and receives assistance with her bags, goes on two approximately-20 minute walks, and retrieves her mail. The footage also shows Chellino going to the horse stables twice, during which time she carries what appears to be an empty plastic bucket against her torso; carries what appears to be rope or horse reins; carries two small, unidentified objects; lifts, opens, and shakes a relatively empty bag; bends slightly at the waist a few times; stands and interacts with others for short periods of time; mounts a horse after first stepping onto a raised platform; rides two slow horses; and leads horses.
Chellino does not, as Dr. Krames wrote, “pull” horses; she walks alongside the horses while holding onto a lead. Nor does she lift or carry “relatively heavy” objects; all of the objects that she lifts and carries — rope or reins, two small, unidentified objects, an empty plastic bucket, and a relatively empty bag — appear to be -within her stated limitation of not carrying objects that weigh more than two pounds. Chellino also, as she had reported, wore wrist braces and, at times, a neck brace. Furthermore, that Chellino walks without antalgic gait cannot explain Dr. Krames’ changed opinion, as she walked without antalgic gait when Dr. Krames opined that she was totally disabled. Moreover, although Dr. Krames wrote that Chellino does not appear to exhibit “any degree of pain behavior” during her surveilled activities, Chellino told Dr. Krames that pain limits her activities only “approximately 70% of the time” and that she is “able to cope with her pain fairly well.” See Jordan, 370 F.3d at 872 (“[T]he symptoms [of fibromyalgia] can be worse at some times than others.”), abrogated on other grounds by Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955 (9th Cir.2006) (en banc) and Montour, 582 F.3d at 941-42. Dr. Marks’s report is unreliable for these same reasons.
2. Dr. Marks’s reliance on the Functional Capacity Evaluation (“FCE”) is also misplaced. Aetna considered the FCE invalid. In addition, Dr. Marks discounted Dr. Dixit’s opinion that Chellino was “totally and permanently disabled” and that there was “absolutely nothing” about Chellino’s surveilled activities that would lead him to believe otherwise, because Dr. Marks believed that Dr. Dixit had not examined Chellino. The first line of Dr. Dixit’s report indicates that he did examine Chellino. In sum, no aspect of Dr. Marks’s opinion constitutes reliable evidence.
3. In making its adverse benefits determination, Aetna relied in part on Chellino’s failure to provide objective medical evidence of her fibromyalgia. “[F]ailure to produce [objective] evidence that simply is not available” is a consideration that “bear[s] on the degree of deference ... [to be] accord[ed] [Aetna’s] decision....” Saffon v. Wells Fargo & Co. Long Term Disability Plan, 522 F.3d 863, 873 (9th Cir.2008). As “fibromyalgia’s cause or causes are unknown, there is no cure, and ... its symptoms are entirely subjective,” Jordan, 370 F.3d at 872, “[objective tests [such as are] administered to rule out other diseases ... do not establish the presence or absence of fibromyalgia.” Id. “The only symptom that discriminates between it and other syndromes and diseases is multiple tender spots, which [are] eighteen fixed locations on the body that when pressed firmly cause the patient to flinch.” Id. *167 Chellino was found by Dr. Krames to be tender at all eighteen points.
4. Aetna’s vocational assessment does not constitute reliable evidence of Chellino’s functional ability, as it was dependent on an Aetna physician’s adoption of Dr. Krames’s inaccurate report.
After examining Chellino and viewing the surveillance footage, Chellino’s treating physician, her physical therapist, and Dr. Dixit all opined that Chellino was totally disabled and was unable to engage in gainful employment. Given Aetna’s inherent conflict of interest, reliance on unsupported evidence, and failure to credit evidence not so flawed, Aetna’s decision to terminate Chellino’s benefits was an abuse of discretion. Accordingly, we reverse the district court’s summary judgment in favor of Aetna and remand to the district court to enter summary judgment in favor of Chellino and to order the reinstatement of her long-term disability benefits under the terms of the Plan.
REVERSED and REMANDED.

 This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.