FILED

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

OCT 19 2010

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

CONSTANCE FINLEY,

   Plaintiff - Appellee,

 v.

HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY; THE
BOSTON FINANCIAL GROUP LONG-
TERM DISABILITY PLAN,

   Defendants - Appellants,

 and

DEMPSEY INVESTIGATIONS, INC.,

   Defendant.

No. 09-17778

D.C. No. 4:06-cv-06247-CW

MEMORANDUM[*]

Appeal from the United States District Court
for the Northern District of California
Claudia A. Wilken, District Judge, Presiding

Argued and Submitted October 7, 2010
San Francisco, California

Before: THOMPSON, SILVERMAN and McKEOWN, Circuit Judges.

---

  [*] This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

Hartford Life & Accident Insurance Company appeals from the district court's judgment in favor of Constance Finley after a bench trial. We have jurisdiction under 28 U.S.C. § 1291 and we reverse.

Finley brought an action against Hartford under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a)(1)(B), for terminating her benefits under Boston Financial's Group Long-Term Disability Plan. Finley claimed to have constant disabling pain in her hands, arms, shoulders, mid to upper back, and neck that increased with mild physical activities, such as normal household chores, shopping, and holding a telephone. Video of Finley, however, showed her vigorously pulling weeds in kneeling and squatting positions, lifting and carrying objects using both her arms, raising her arms over her head to point and carry objects, and using tools to scrape, push, and pull without any apparent difficulty. The following day, Finley left her house to walk her dogs with a purse strapped over her shoulder and the dogs' leashes in her hand. Finley drove to a walking trail, walked the dogs for over an hour, and then brushed them down before driving home.

After having Finley's medical history reviewed by multiple doctors, Hartford concluded that she was capable of performing sedentary work and

canceled her disability benefits. On review of Hartford's decision, the district court found evidence of bias in the reviewing physicians' reliance on the surveillance video, certain inferences that the reviewing physicians drew in favor of Hartford, the fact that none of Hartford's physicians physically evaluated Finley, and that Hartford had rendered a biased decision in *Montour v. Hartford Life & Accident Insurance Co.*, 588 F.3d 623, 629 (9th Cir. 2009). It thus "accorded significant weight" to the conflict of interest factor and held that Hartford had abused its discretion.

"We review 'a district court's choice and application of the appropriate standard for reviewing benefits decisions by an ERISA plan administrator' de novo." *Id.* (quoting *Sznewajs v. U.S. Bancorp Amended & Restated Supplemental Benefits Plan*, 572 F.3d 727, 732 (9th Cir. 2009)). Where, as here, a plan grants the plan administrator discretionary authority to determine eligibility for benefits, the panel reviews "the administrator's decision for abuse of discretion." *Id.* "[T]he extent to which a conflict of interest appears to have motivated an administrator's decision is one among potentially many relevant factors that must be considered" in determining whether the administrator abused its discretion. *Id.* at 630. The reviewing court must "adjust[] the weight given [the conflict of interest] factor based on the degree to which the conflict appears improperly to

-3-

have influenced a plan administrator's decision." *Id.* at 631 (citing *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 968 (9th Cir. 2006) (en banc)).

The district court erred in assigning controlling weight to the conflict of interest factor because, unlike in *Montour*, the evidence in this case does not indicate that the conflict "tainted the entire administrative decisionmaking process." *Id.* Hartford did not distort the content of the video or overemphasize its importance when requesting medical reviews. Nor did Hartford's doctors themselves mischaracterize Finley's activities or rely on the videos to the exclusion of all other evidence. The district court thought that the doctors relied too heavily on the videos, but Hartford provided the reviewing physicians guidance to consider the videos, directing the physicians not to rely too heavily (or too little) on them. These instructions were an appropriate effort to reduce bias and consider all available evidence.

This does not mean that Hartford's decision was entitled to unmitigated deference. The district court should have reviewed Hartford's termination decision with a "moderate degree of skepticism," as it originally concluded.

Viewing the medical and documentary evidence underlying Hartford's decision with a moderate degree of skepticism, Hartford did not abuse its discretion. Finley's primary complaint was of disabling pain in her hands, arms,

shoulders, neck, and mid to upper back. Finley claims her pain is caused by a rheumatological condition called ankylosing spondylitis. Accepting that Finley has a rheumatological condition, the functional limitations imposed by that condition depends upon the degree of pain that she experiences with activity.

It was not an abuse of discretion for Hartford to conclude that Finley lacked credibility and therefore to discount the value of her self-reported pain incidence, the heart of her claim and her doctor's assessments of her health, and place more weight on the surveillance video. There was sufficient objective evidence that Finley's condition did not cause pain rising to the disabling level. *See id.* at 635 (citing *Orn v. Astrue*, 495 F.3d 625, 637-38 (9th Cir. 2007)). As the district court stated in its first order on the merits, the videos show Finley "performing vigorous yard work requiring the use of her arms in a way that far exceeded her reported abilities." Hartford's physicians watched the videos and they all concluded that her activities evidenced an ability to work at a level greater than she admitted. They also agreed that the activities she performed were too strenuous to simply have been the result of a temporary improvement in her condition.

In contrast, Finley's physicians did not adequately explain how her activities in the videos were consistent with their conclusion that she could not work. They explained that mild physical activity helped to alleviate Finley's symptoms, but

that explanation contradicted Finley's own description of her pain, which she repeatedly said increased with even mild physical activity. Moreover, Finley's rheumatologist provided no individualized basis for his conclusion that she could not work, relying exclusively on his diagnosis of ankylosing spondylitis to reach that conclusion.

Again, as the district court originally recognized, "when considered together with Plaintiff's self-reported limitations, the video severely damages [Finley's] credibility." Immediately before Finley saw the video, she signed a statement attesting that she had been unable to perform even mild physical activity for the past six months. After seeing the video, Finley gave several contradictory explanations for her activities. First she said that she was in severe pain while performing the activities, but then later said that she was able to do them because she was in a period of feeling better. She also stated that it took her two weeks to recover from the gardening, despite the fact that she walked her dogs for over an hour and brushed them down the next day.

Given Finley's lack of credibility and her doctors' unsupported assertions that she could not work, it was not unreasonable for Hartford to disbelieve Finley's claim that any use of her upper extremities caused her disabling pain. Hartford did

not abuse its discretion in ultimately concluding that Finley is capable of sedentary work and terminating her benefits.

REVERSED and REMANDED for the district court to enter judgment in favor of Hartford.