Filed 11/9/10 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2010 ND 218

Terry Sanders, Plaintiff and Appellant

v.

Gravel Products, Inc., Defendant and Appellee

No. 20090318

Appeal from the District Court of Ward County, Northwest Judicial District, the Honorable David W. Nelson, Judge.

AFFIRMED.

Opinion of the Court by Kapsner, Justice.

Leo F.J. Wilking (argued) and Mark Vincent Larson (on brief), P.O. Box 2004, Minot, N.D. 58702-2004, for plaintiff and appellant.

Lawrence E. King (argued) and Kara Jean Johnson (appeared), P.O. Box 1695, Bismarck, N.D. 58502-1695, for defendant and appellee.

Sanders v. Gravel Products, Inc.

No. 20090318

Kapsner, Justice.

[¶1] Terry Sanders appeals from the district court judgment dismissing his claim for enforcement of a deferred compensation agreement with Gravel Products, Inc.  We hold Gravel Products complied with the plain and unambiguous language of the deferred compensation agreement, and we affirm.

I

[¶2] The relevant facts for this case are set forth in 
Sanders v. Gravel Products, Inc.
, 2008 ND 161, ¶¶ 2-5, 755 N.W.2d 826 (“
Sanders I
”), and we will repeat them here only as necessary to resolve the issues properly raised in this appeal.  Sanders began working for Gravel Products in 1980 as an office manager, eventually becoming company president in the early 1990s.  In December 1996, when Sanders was 39 years old, he entered into a deferred compensation agreement with Gravel Products.  The agreement provided that, from age 60 through 75, Sanders would receive annual benefits from Gravel Products, with the amount of annual benefits increasing the longer Sanders remained employed with the company.  A table for the annual benefits described benefits ranging from $8,500 per year if Sanders was terminated at age 41, up to $170,000 per year if he was terminated at age 60.  The agreement also stated:

At the option of the Corporation or Employee, if Employee’s employment is terminated on or after the Employee shall have reached the age of 41 for a reason other than death or the Company is sold or liquidated, 
the insurance policy purchased by Corporation to fund this plan may be assigned to Employee as full payment of all obligations created by this plan
. The transfer shall be completed within 30 days of termination and Employee shall be responsible for all tax consequences.

(Emphasis added.)  In May 1997, Gravel Products purchased a “Flexible Premium Adjustable Variable Life Insurance Policy” to fund the plan.  The policy named Sanders as the insured, and Gravel Products began paying $14,000 in annual premiums for the policy.

[¶3] In October 2003, Gravel Products terminated Sanders’ employment, when he was 46 years old.  Under the table for annual benefits in the deferred compensation agreement, Sanders would have been eligible to receive $51,000 per year for 15 years when he turned age 60.  However, Gravel Products opted to assign the life insurance policy to Sanders under the terms of the agreement.  The policy was transferred to Sanders in 2004, with a net cash surrender value of $114,072.83.  

[¶4] Sanders sued Gravel Products for breach of contract, alleging Gravel Products failed to assign the insurance policy to him within 30 days of his termination.  He also asserted a claim under the Employee Retirement Income Security Act (“ERISA”), 29 U.S.C. §§ 1001-1461, alleging Gravel Products had failed to fully fund his retirement plan under the deferred compensation agreement.

[¶5] In 
Sanders I
, 2008 ND 161, ¶¶ 11-12, 755 N.W.2d 826, we affirmed the district court’s dismissal of Sanders’ breach of contract action, concluding as a matter of law Sanders’ request to delay the transfer of the insurance policy for personal tax purposes constituted a waiver of the 30-day period for assignment of the policy.  We held, however, the district court erred in granting summary judgment dismissal of Sanders’ ERISA claim for alleged failure to fully fund his retirement plan under the deferred compensation agreement.  
Id.
 at ¶ 24.  We concluded Sanders had raised a genuine issue of material fact whether his agreement with Gravel Products was an ERISA plan.  
Id.
 at ¶ 23.  We remanded to the district court with instructions to decide whether Sanders’ deferred compensation agreement was an ERISA plan and, if it was, to consider the merits of Sanders’ ERISA claim.  
Id.
 at ¶¶ 24-25.

[¶6] On remand, Sanders and Gravel Products stipulated that Sanders’ deferred compensation agreement was an ERISA plan and, further, that it was a “top-hat” plan, which we described in 
Sanders I
, 2008 ND 161, ¶ 20, 755 N.W.2d at 826, as “‘a pension plan which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly trained employees.’”  (Citation omitted.)  After trial, the district court rejected Sanders’ contention that as a unilateral contract the agreement could not be amended, holding Gravel Products did not impermissibly amend the agreement when Gravel Products assigned the insurance policy to Sanders more than 30 days after Sanders was terminated.  The court decided Sanders freely entered into the top-hat plan and “[t]he Agreement clearly and unambiguously gives both parties the option of choosing an annual payout beginning at age 60 or the assignment of the insurance policy to Sanders.”  The court also rejected Sanders’ argument that ERISA law prohibited any variation from the agreement for payment of benefits, even if the variation was allegedly authorized in a waiver granted by the plan recipient. 

II

[¶7] Sanders argues the unambiguous language of the deferred compensation agreement required Gravel Products to fully fund his plan with sufficient money to pay him benefits according to the amount specified in the table for annual benefits.  He alternatively argues that if the deferred compensation agreement is ambiguous about the level of funding, the agreement must be construed against the drafter, Gravel Products, to provide funding sufficient to pay the amount specified in the table for annual benefits.

[¶8] The issues raised in this case involve the interpretation of the top-hat plan in the deferred compensation agreement in the context of ERISA.  We first consider our standard of review of the district court’s decision disposing of Sanders’ ERISA claims, as it pertains to a top-hat plan.  Here, the deferred compensation agreement provides Gravel Products’ board with broad authority to interpret and administer the agreement:  

The Board shall have full power and authority to interpret, construe, and administer this Agreement and the Board’s interpretations and construction thereof, and actions thereunder, including any valuation of the Deferred Compensation Account, or the amount or recipient of the payment to be made therefrom, shall be binding and conclusive on all persons for all purposes. 

[¶9] The Supreme Court has held that where an ERISA plan does not provide otherwise, a court should apply a de novo standard of review to an administrator’s interpretation of the plan and determination of benefits.  
See
 
Sznewajs v. U.S. Bancorp Amended and Restated Supplemental Benefits Plan
, 572 F.3d 727, 733 (9th Cir. 2009) (citing 
Metropolitan Life Ins. Co. v. Glenn
, 128 S. Ct. 2343, 2346 (2008), and 
Firestone Tire and Rubber Co. v. Bruch
, 489 U.S. 101, 115 (1989)).  However, if a plan grants the plan administrator discretionary authority to construe the plan’s terms, the appropriate standard of review is an abuse of discretion, and a plan administrator’s conflict of interest is included as a factor in deciding whether that discretion has been abused.  
Sznewajs
, 572 F.3d at 733.  In 
Sznewajs
, at 733, the court of appeals discussed a conflict of interest:

As 
MetLife
 explained, a conflict of interest commonly arises when a plan administrator serves the “dual role” of “both determin[ing] whether an employee is eligible for benefits 
and
 pay[ing] benefits out of its own pocket.”  128 S. Ct. at 2346 (emphasis added).  The “informed” element of the informed abuse of discretion standard reflects the possibility that the plan administrator might be influenced to interpret the plan to favor its own financial interests. The possible bias that results from such a conflict of interest is, not surprisingly, a contentious issue in many ERISA benefits lawsuits. 

In 
Sznewajs
, the court also analyzed a circuit split in applying Supreme Court precedent to top-hat plans:

Neither 
Firestone
 nor 
MetLife
 involved top hat plans. As we noted in 
Gilliam
, 488 F.3d at 1194, the Third and Eighth Circuits have carved a top hat exception out of 
Firestone
 by reviewing de novo the benefit determinations by administrators of top hat plans despite the existence of discretion-granting clauses in the pension plans at issue in these cases. 
See
 
Goldstein v. Johnson & Johnson
, 251 F.3d 433, 442-43 (3d Cir. 2001); 
Craig v. Pillsbury Non-Qualified Pension Plan
, 458 F.3d 748, 752 (8th Cir. 2006). Both 
Goldstein
 and 
Craig
 emphasized, however, that application of a de novo standard of review did not materially change the outcome in either case, since ordinary contract principles require a reviewing court to give full effect to the entire pension plan, including any provisions granting the administrator discretionary interpretation.  
Goldstein
, 251 F.3d at 436, 443-44; 
Craig
, 458 F.3d at 752. 

We do not believe, and have found no cases to suggest, that applying a different standard of review under these circumstances would lead to a materially different result. We conclude that importing “de novo” language into the standard of review simply because the plan involved is a top hat plan would create unnecessary confusion. We will therefore continue to adhere to the framework established by the Supreme Court in 
Firestone
 and 
MetLife
 for all covered plans, top hat or otherwise. Where, as here, there was no conflict of interest that tainted the Plan’s determination, the Plan’s decision should be upheld unless it constituted an abuse of discretion. 

572 F.3d at 734.

[¶10] Although the Ninth Circuit in 
Sznewajs
 declined to “import” a de novo standard of review to top-hat plans, the Eighh Circuit in 
Craig
, 458 F.3d at 752 (quoting 
Goldstein
, 251 F.3d at 443) applied a de novo review “to top hat plans even when they give their administrators interpretive discretion because ‘a top hat administrator has no fiduciary responsibilities’ under ERISA.”  

[¶11] Nonetheless, we need not resolve the split regarding the proper standard of review for top hat plans because application of the de novo standard of review in this case would not materially change the outcome.

III

[¶12] Sanders argues the deferred compensation agreement was unambiguous in referring to “the insurance policy purchased by Corporation to fund this plan.”  Sanders claims that language unambiguously obligated Gravel Products to provide him with a policy of sufficient value to fully fund the agreement’s promised benefits.  Sanders alternatively argues the agreement was ambiguous and must be construed against the drafter, Gravel Products, to obligate it to provide him with an insurance policy of sufficient value, or the promised benefits would be illusory.  Gravel Products argues the top-hat plan was a unilateral contract that was not breached, nor did it created an illusory promise under the agreement.

[¶13] “ERISA ‘comprehensively regulates employee benefit and retirement plans’  and ‘preempts state laws which “relate to” any employee benefit plan.’”  
Sanders I
, 2008 ND 161, ¶ 15, 755 N.W.2d 826 (quoting 
Tolstad v. Tolstad
, 527 N.W.2d 668, 670 (N.D.1995), and 29 U.S.C § 1144(a)).  “The preemption clause applies broadly to all state laws that have any direct or indirect relation to pension plans even if they were not designed specifically for that purpose.”  
Brewer v. Lincoln Nat’l Life Ins. Co.
, 921 F.2d 150, 153 (8th Cir. 1990); 
see also
 
Algren v. Pirelli Armstrong Tire Corp.
, 197 F.3d 915, 916-17 (8th Cir. 1999) (ERISA preempted plaintiffs’ state-law promissory-estoppel claims, and any federal common law or ERISA-based estoppel claim also failed because relied-upon representations were contrary to “plain and unambiguous” language of the plan documents); 
Lindsay v. Cottingham & Butler Ins. Servs., Inc.
, 763 N.W.2d 568, 574 (Iowa 2009) (substantial evidence supported district court’s finding deferred benefit plan was a “top hat” plan and was therefore exempt from ERISA’s nonforfeitability protection; allowing the top-hat plan to include enforceable non-compete forfeiture provisions, even if unenforceable under state law).

[¶14] Generally, federal courts have exclusive jurisdiction of ERISA actions, but under 29 U.S.C. § 1132(e), “[s]tate courts of competent jurisdiction and district courts of the United States . . . have concurrent jurisdiction of actions under [29 U.S.C. § 1132(a)(1)(B) and 1132(a)(7)].”  As we said in 
Sanders I
, 2008 ND 161, ¶ 15, 755 N.W.2d 826, the pertinent provision here is 29 U.S.C. § 1132(a)(1)(B), which provides “[a] civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.”  In 
Sanders I
, at ¶ 16, we concluded the state district court had concurrent jurisdiction over Sanders’ remaining claim “that Gravel Products violated ERISA by failing to adequately fund his retirement plan under the deferred compensation agreement.”

[¶15] Here, although we remanded for factual determinations regarding whether Sanders’ deferred compensation agreement was an ERISA plan, the parties stipulated that the agreement was an ERISA plan and, further, was a top-hat plan.
(footnote: 1)
[¶16] “A ‘top hat’ plan is a pension plan which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly trained employees.”  
Sanders I
, 2008 ND 161, ¶ 20, 755 N.W.2d 826 (quotation omitted).  
See
 29 U.S.C. §§ 1051(2), 1081(3), 1101(a)(1); 
see also
 
Healy v. Rich Prods. Corp.
, 981 F.2d 68, 72 (2d Cir. 1992).  As a special category of ERISA plans, top-hat plans are exempt from some substantive provisions of ERISA like participation, vesting, funding, and fiduciary responsibilities, but are subject to ERISA’s enforcement procedures.  
See
 
Garratt v. Knowles
, 245 F.3d 941, 946 n.4 (7th Cir. 2001); 
Demery v. Extebank Deferred Compensation Plan (B)
, 216 F.3d 283, 286-87 (2d Cir. 2000).  “Specifically,‘Top Hat’ plans are not subject to ERISA’s requirements for vesting and funding, 
see
 29 U.S.C. §§ 1051(2); 1081(a), and the administrators of these plans are not subject to ERISA’s fiduciary requirements.  
See
 29 U.S.C. §§ 1051(2), 1081(a), 1101(a).”  
Sanders I
, 2008 ND 161, ¶ 20, 755 N.W.2d 826 (quoting 
Fields v. Thompson Printing Co., Inc.
, 363 F.3d 259, 274 (3d Cir. 2004)).  Top-hat plans are “excluded from ERISA’s vesting, funding, and fiduciary responsibility requirements because Congress deemed top-level management, unlike most employees, to be capable of protecting their own pension expectations.”  
Gallione v. Flaherty
, 70 F.3d 724, 727 (2d Cir. 1995); 
see also
 
Goldstein
, 251 F.3d at 442 (top-hat plans intended to compensate only highly-paid executives, who are in a strong bargaining position relative to their employers).

[¶17] “[E]very claim for relief involving an ERISA plan must be analyzed within the framework of ERISA.”  
Hooven v. Exxon Mobil Corp.
, 465 F.3d 566, 573 (3d Cir. 2006).  ERISA requires “any contractually accrued rights be discernible from the written terms of the formal ERISA plan documents themselves.”  
Id.
 (internal quotation omitted).  A plaintiff seeking to recover under 29 U.S.C. § 1132(a)(1)(B) must still demonstrate “that the benefits are actually ‘due’; that is, he or she must have a right to benefits that is legally enforceable against the plan.”  
Hooven
, at 574.

[¶18] In reviewing an ERISA plan under the de novo standard, a court examines the language of the plan documents.  
See
 
Bond v. Cerner Corp.
, 309 F.3d 1064, 1067 (8th Cir. 2002).  To construe disputed terms in a plan, a court must look to federal common law.  
See
 
King v. Hartford Life & Acc. Ins. Co.
, 414 F.3d 994, 998 (8th Cir. 2005) (citing 
Brewer
, 921 F.2d at 153-54).  “In fashioning federal common law under ERISA, including principles that govern the legal effect of plan terms, courts may look to state law for guidance so long as the state law is not contrary to the provisions of ERISA.”  
Mansker v. TMG Life Ins. Co.
, 54 F.3d 1322, 1326 (8th Cir. 1995).

[¶19] A court must “interpret the terms of the plan by ‘giving the language its common and ordinary meaning as a reasonable person in the position of the [plan] participant, not the actual participant, would have understood the words to mean.’” 
Adams v. Continental Cas. Co.
, 364 F.3d 952, 954 (8th Cir. 2004) (quoting 
Hughes v. 3M Retiree Med. Plan
, 281 F.3d 786, 789-90 (8th Cir. 2002)).  “If any part of the plan document is ambiguous, the court looks at the entire document and even extrinsic evidence to determine its intent and purpose.”  
Pendleton v. QuikTrip Corp.
, 567 F.3d 988, 992-93 (8th Cir. 2009); 
see also
 
Jensen v. SIPCO, Inc.
, 38 F.3d 945, 950 (8th Cir. 1994)).

[¶20] Here, the language of the deferred compensation agreement provides that “the insurance policy purchased by [Gravel Products] to fund this plan may be assigned to [Sanders] as full payment of all obligations created by this plan.”  Relying on North Dakota rules for contract interpretation, Sanders argues the phrase “to fund this plan” means Gravel Products was obligated to purchase an insurance policy “to fully fund” the obligation created by the top-hat plan.

[¶21] In 2004, the insurance policy was transferred to Sanders with a net cash surrender value of $114,072.83.  Sanders submitted evidence from an expert witness, showing that additional sums beyond the surrender value of the policy would be necessary to fund an annual benefit of $51,000 when he turned 60 years of age.  Sanders’ argument presumes the deferred compensation agreement required the insurance policy to “fully fund” his plan for the benefits due when he turned 60.

[¶22] A top-hat plan by definition is unfunded.  
See
 
Demery
, 216 F.3d at 287 (generally plan is “unfunded where the ‘benefits thereunder will be paid . . . solely from the general assets of the employer’”); 
Dependahl v. Falstaff Brewing Corp.
, 653 F.2d 1208, 1214 (8th Cir. 1981) (“[f]unding implies the existence of a 
res
 separate from the ordinary assets of the corporation”).  Although Sanders acknowledges that a top-hat plan is unfunded, he asserts that “under the terms of the plan” the insurance policy referenced by the agreement was required to fully fund the plan to satisfy the obligation in the annual benefits table.  Based on our review of the language of the agreement, we find no such requirement.  Rather, the agreement plainly contemplates that the insurance policy purchased by Gravel Products could be assigned “as full payment” for all of the plan’s obligations.  

[¶23] Here, Sanders received what he bargained for under the plain language of the deferred compensation agreement and when he requested assignment of the policy to him in 2004.  We conclude the agreement providing that either party had the option of assigning the insurance policy, rather than paying the sums stated in the annual benefits table, was not an illusory promise because under either option, Gravel Products was required under the agreement to make some payment, which it did in transferring to Sanders the policy with a value of $114,072.83.

[¶24] Because we conclude the agreement is unambiguous, we reject Sanders’ argument that the agreement should be construed against the drafter, Gravel Products, under North Dakota contract law.  
Cf.
 
Prudential Ins. Co. of America v. Doe
, 140 F.3d 785, 790-91 (8th Cir. 1998) (recognizing 
Brewer
 that Missouri’s 
contra proferentem
 rule of construction i.e., construing plan ambiguities against the drafter, violates ERISA provisions and cannot be used to interpret the plan’s terms); 
Brewer
, 921 F.2d at 153 (same); 
but see
 
Delk v. Durham Life Ins. Co.
, 959 F.2d 104, 105-06 (8th Cir. 1992) (construing ERISA plan’s ambiguities against the drafter as a last resort).

[¶25] We conclude the district court did not err in deciding the deferred compensation agreement clearly and unambiguously gave either Sanders or Gravel Products the option of choosing an annual payout beginning at age 60, or the assignment of the insurance policy to Sanders, and that the insurance policy was assigned as full payment to Sanders in 2004.  We therefore conclude Gravel Products complied with the unambiguous language of the agreement and the district court did not err in dismissing Sanders’ ERISA claim.

IV

[¶26] Relying on 29 U.S.C. § 1132(a)(3), Sanders argues that under principles of equitable estoppel, he is entitled to the difference between the insurance policy’s surrender value when it was assigned in March 2004 and the value necessary to provide full funding for the promised benefits.  Gravel Products asserts, however, that Sanders did not raise a claim for equitable estoppel in the district court, and may not raise the issue for first time on appeal.  Sanders replies that the federal common law on contracts is more favorable to Sanders than North Dakota contract law because it recognizes a contracting party’s obligation to act in good faith and to deal fairly with the other party.  He further claims he had neither financial sophistication nor bargaining power in executing the deferred compensation agreement.  During oral argument, Gravel Products’ counsel argued Sanders’ arguments had again shifted focus and these issues were not presented to the district court on remand.  We agree.

[¶27] In this appeal, Sanders is limited to the ERISA issues specifically raised in the district court.  We have consistently stated that issues presented on appeal must first be raised and addressed in the district court.  
See
 
Wolt v. Wolt
, 2010 ND 26, ¶ 49, 778 N.W.2d 786; 
Rutherford v. BNSF Ry. Co.
, 2009 ND 88, ¶ 13, 765 N.W.2d 705.  “It is axiomatic that an issue or contention not raised or considered in the lower court cannot be raised for the first time on appeal from judgment.”  
Rutherford
, at ¶ 13 (quotation omitted). 

[¶28] When we remanded this case for a determination on Sanders’ ERISA claim, Sanders could have raised any ERISA issue subject to the state district court’s concurrent jurisdiction.  Based upon our review of the proceedings on remand we conclude these issues were not sufficiently presented to the district court for disposition and may not be raised on appeal.  

V

[¶29] We have considered Sanders’ remaining issues and arguments and consider them to be unnecessary to our decision or without merit.  The district court judgment is affirmed.

[¶30] Carol Ronning Kapsner

Mary Muehlen Maring

Daniel J. Crothers

Dale V. Sandstrom

Gerald W. VandeWalle, C.J.

FOOTNOTES
1:
Because the parties stipulated on remand that Sanders’ deferred compensation plan was a top-hat plan, and thus for purposes of ERISA was unfunded, we will not in the context of this appeal address whether the insurance policy here funded Sanders’ plan.  
See, e.g.
, 
Belsky v. First Nat’l Life Ins. Co.
, 818 F.2d 661, 663 (8th Cir. 1987); 
Dependahl v. Falstaff Brewing Corp.
, 653 F.2d 1208, 1214 (8th Cir. 1981)
; 
see also
 
Godina v. Resinall Int’l, Inc.
, 677 F. Supp. 2d 560, 573-74 (D. Conn. 2009); 
Miller v. Heller
, 915 F. Supp. 651, 660-61 (S.D. N.Y. 1996).