**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| DAVID SCOTT ELLIOT, | No. 09-56730 |
| Plaintiff-Appellant, | D.C 5:07-cv-00418-SGL-(OPx) |
| v. | |
| ELLIOT, LEIBL, & SNYDER, LLP LONG-TERM DISABILITY PLAN; FORTIS BENEFITS INSURANCE COMPANY; UNIONS SECURITY INSURANCE COMPANY; AND ASSURANT EMPLOYEE BENEFITS, | MEMORANDUM* |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Central District of California
Stephen G., Larson, District Judge, Presiding

Argued and Submitted May 6, 2011
Pasadena, California

Before: NOONAN, PAEZ, Circuit Judges, and KORMAN,** District Judge.

---

\* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

\** The Honorable Edward R. Korman, Senior United States District Judge, Eastern District of New York, sitting by designation.

David Scott Elliot became permanently disabled and began receiving benefits under the Elliot, Leibl & Snyder, LLP, Long-Term Disability Plan ("Plan") in December 1999. Elliot was eligible to receive the maximum benefit payable–$10,000 per month–exclusive of annual cost of living adjustments ("COLA"). COLA adjustments occurred annually on the anniversary date of Elliot's benefit eligibility, December 20th. The amount payable to Elliot in the subsequent year was determined by multiplying a COLA "factor" by the benefit then payable to Elliot.

Elliot applied for Social Security Disability ("SSD") benefits from the Social Security Administration on March 12, 2004. In June 2006, he received an award of SSD benefits retroactive to February 2003. The award totaled $72,954.50, for the period from February 2003 through April 2006. Following this lump-sum retroactive award from SSD, USIC recalculated the benefits it had conferred upon Elliot from February 2003 onwards. This recalculation resulted in a permanent reduction of Elliot's benefits going forward and the determination that USIC was entitled to clawback $79,384.15 in benefits paid to Elliot between 2003 and 2006. This $79,384.15 clawback was greater than the $72,954.50 retroactive SSD award Elliot had received. Elliot does not dispute the fact that USIC was entitled to a clawback,

but contests that the clawback was greater than his retroactive SSD award. Specifically, he takes issue with the methodology by which USIC recalculated his benefits beginning in February 2003 to arrive at this greater clawback amount and the permanent reduction of his benefits going forward.

In February 2003, prior to any recalculation of benefits following the retroactive SSD award, the benefit payable to Elliot under the Plan was $10,716 a month. This amount reflected an original monthly payment, or "Schedule Amount," of $10,000, plus annual cost of living adjustments for the years 2000, 2001, and 2002. When USIC recalculated Elliot's award following the retroactive SSD payment, USIC reduced Elliot's monthly benefits beginning in February 2003 to a total benefit payment of $8,775 a month. To arrive at the $8,775 monthly payment, USIC engaged in the following exercise: first, it subtracted Elliot's SSD payment of $1,811 from the original 1999 $10,000 monthly payment. This calculation resulted in a new monthly pre-COLA base payment of $8,189. Then, it determined Elliot's benefit in February 2003, by multiplying the COLAs for 2000, 2001, and 2002 (3%, 2.6% and 1.4%, respectively) by this $8,189 basis, yielding a COLA-adjusted monthly payment to Elliot of $8,775. The district court agreed with USIC's calculation and this appeal followed.

Because the ERISA Plan in this case conferred unambiguous discretionary

authority on USIC to determine plan benefits, USIC's decisions regarding plan benefits are reviewed for an abuse of discretion. *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 110-11 (2008)*; accord, Sznewajs v. U.S. Bancorp Amended and Restated Supplemental Benefits Plan*, 572 F.3d 727 (9th Cir. 2009).  "A plan administrator's decision to deny benefits must be upheld under the abuse of discretion standard if it is based upon a reasonable interpretation of the plan's terms and if it was made in good faith."  *McDaniel v. Chevron Corp.*, 203 F.3d 1099, 1113 (9th Cir. 2000).

We reverse and remand because USIC's interpretation and application of its Plan is arbitrary and capricious and inconsistent with the Plan language.  Specifically, by decreasing Elliot's original $10,000 award, conferred in 1999-dollars, by the $1,811 SSD benefit conferred to Elliot in 2003-dollars, USIC mixed past and present dollar amounts in a single calculation, a computation which is mathematically unsound.

The record shows that in 2006, when the Social Security Administration calculated Elliot's award of $1,811/month retroactive to February of 2003, this calculation necessarily conferred a benefit tied to the cost of living in 2003. Subsequent increases were intended to ensure a degree of constancy in purchasing

4

power.[1]  This is evidenced by the fact that in subsequent years, Elliot's original $1,811/month SSD benefit awarded in February 2003 increased by the cost of living adjustment as follows: 12/03-11/04: $1,849; 12/04-11/05: $1,898; 12/05-11/06: $1,976.  Accordingly, it follows that *had* Elliot been eligible for and received an award from the Social Security Administration in 1999, the award would have been tied to the cost of living in 1999.  Thus, this SSD award would have been for an amount less than $1,811/month, increasing annually to reach $1,811 by 2003.  *See, e.g.* COLA adjustments on SSD awards for 2000-2002, US 216.  Accordingly, by subtracting an offset tied to 2003 ($1,811) from a benefit conferred in 1999 ($10,000) to arrive at Elliot's benefit in February 2003, USIC subtracted too high a dollar amount.[2]

---

[1]  It should be noted that money does not maintain a static value over time but rather becomes less valuable with inflation.  Cost of living adjustments (COLAs) are intended to adjust for this loss of purchasing power by increasing the face value of a dollar in order to keep purchasing power steady over time.

[2] USIC's methodology in subtracting Elliot's SSD offset from the $10,000 Schedule Amount conferred in 1999-dollars would not be mathematically unsound *if* USIC had adjusted or "discounted" the $1,811 award conferred in 2003-dollars to reflect 1999-dollars.  Such discounting is accomplished by dividing $1,811 by  the Social Security COLA's for 2002 (1.4%), 2001 (2.6%), and 2000 (3.5%) as follows:  $1,811 / (1.014 x 1.026 x 1.035 ) = $1,681.87.  This number represents what Elliot's SSD benefits would have been in 1999.  Subtracting $1,681.87 from the original Schedule Amount of $10,000 yields $8,318.13 as the adjusted basis which USIC reasonably could have used to determine Elliot's award beginning in February 2003.  Calculating Elliot's award in February 2003 using USIC's methodology but this properly adjusted basis, would yield the following: $8,318.13 x (1.03 x 1.026 x 1.014)=$8,913.50 as the monthly benefit to which Elliot was entitled beginning in February 2003.  This would also be the number upon which Elliot's subsequent cost of living adjustments could have been made.

Elliot argues that, since he did not receive SSD benefits in the years prior to 2003 and because his SSD benefit was conferred in 2003-dollars, USIC should have subtracted his SSD benefit from the benefit he was receiving from USIC in 2003. In February 2003, Elliot was due $10,716 per month from USIC and his monthly SSD benefit was $1,811. Accordingly, USIC should have recalculated his benefits by subtracting the 2003-SSD benefit of $1,811 from the *actual* benefit payable to him on February 1, 2003 of $10,716/month. Under this calculation, Elliot would have received a monthly payment from USIC of $8,905 in February 2003–approximately $130 more than Elliot received in that month following USIC's recalculation of his benefits, and reflecting the higher basis upon which Elliot's cost of living adjustments going forward should have been calculated.

We agree with this methodology which is supported by the language of the Plan's COLA clause and which provides that an annual cost of living adjustment will be determined by taking the amount of "any benefit payable" on the anniversary date–which must mean the benefit the insured currently receives–and multiplying it by the lesser of 3% or the SSD COLA. Moreover, the last sentence of the clause re-enforces this construction. Specifically, it provides that, if the policyholder's disability extends beyond the anniversary "of the day after the qualifying period ends," then "the benefit to be multiplied by the [new cost-of-living] factor will include

6

any past [cost-of living] adjustments" made up to that point. This is precisely the manner in which USIC calculated the cost of living adjustments until February 2003, resulting in an amount payable of $10,716 as of that date. Because Elliot did not receive SSD in the years prior to 2003, we see no justification for reducing that amount by a portion of the cost of living adjustments that had accrued until that date. Indeed, at oral argument, the attorney for USIC specifically conceded that he was "not arguing about the cost of living adjustments that were made prior to 2003."

In sum, for the foregoing reasons, we hold that the calculation employed by USIC is arbitrary and capricious, and to the extent that USIC construes the terms of the policy to justify that result, it constitutes an abuse of discretion that deprives USIC of the deference in interpreting its own policy language to which it would otherwise be entitled. *See McDaniel v. Chevron Corp.*, 203 F.3d 1099, 1113 (9th Cir. 2000). Consequently, we reverse and remand. Because we have concluded that Elliot should have received $8,905/month from USIC beginning in February 2003, on remand the district court should determine: 1) how much USIC should have paid Elliot in subsequent years through today, and 2) how much USIC's 2006 clawback of Elliot's benefits *should* have been relative to what was actually clawed back. **REVERSED AND REMANDED**